IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CAROLYN BOLIVAR,                    *

    Plaintiff,                     *

vs.                                 *
                         CASE NO. 3:11-CV-24 (CDL)
UNIVERSITY OF GEORGIA SURVEY *
AND RESEARCH,
                            *

    Defendant.
                            *

O R D E R

    Plaintiff Carolyn Bolivar ("Bolivar"), a former employee of the University of Georgia Survey & Research Center, claims that she was denied a promotion based on her age and race.  She also contends that when she complained about the discrimination, she was fired because of her complaints, her age, and her race.  Liberally construing Bolivar's Complaint, Bolivar, who is proceeding pro se, has alleged a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, for age discrimination and claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for race discrimination and retaliation.  Her present Complaint asserts these claims against the Board of Regents of the University System of Georgia ("the Board").[1]  For the

_____

[1] Bolivar's original Complaint named "University of Georgia Survey & Research" as the Defendant, but it is not a legal entity capable of

following reasons, the Court grants Defendant's Motion for Summary Judgment (ECF No. 29).

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

---

being sued. Bolivar subsequently filed a Motion to Amend the Complaint to add the Board of Regents of the University System of Georgia as the defendant. Mot. to Amend the Compl. Against James Bason, ECF No. 19. The Court granted that motion and directed Bolivar to file an amended complaint within fourteen days of the Order. 7/12/2011 Text Order. Although Bolivar never filed an amended complaint, the Court nevertheless interprets Plaintiff's Motion to Amend her Complaint to now allege her claims against the proper Defendant, the Board of Regents, and therefore, the Court addresses whether the Board of Regents is entitled to summary judgment on the merits on those claims. *See McCafferty v. Med. Coll. of Ga.*, 249 Ga. 62, 63-66, 287 S.E.2d 171, 173-74 (1982), *overruled on other grounds by Self v. City of Atlanta*, 259 Ga. 78, 377 S.E.2d 674 (1989) (stating that the Board of Regents of the University System of Georgia is the entity capable of being sued).

FACTUAL BACKGROUND

The facts, viewed in the light most favorable to Bolivar, are as follows.  *Id.* at 255.

**I.   Bolivar's Employment**

Bolivar, an African-American female born in 1955, worked as an interviewer for the University of Georgia's Survey Research Center ("Research Center") from 2008 until April 22, 2010, when her employment was terminated.  Def.'s Statement of Material Facts [hereinafter Def.'s SMF] App. Ex. 12, Bolivar Dep. 10:11-12, 15:23-16:23, 18:8-12, 56:2-9, 94:8-15, ECF No. 29-15.  Dr. Mary Ann Mauney ("Mauney"), the Assistant Director of the Research Center from 1997 through August 2010, was Bolivar's direct supervisor.  Def.'s SMF App. Ex. 14, Mauney Decl. ¶¶ 2, 4, ECF No. 29-17.  Dr. James Bason ("Bason"), Director of the Research Center, supervises all employees of the Research Center, including Bolivar during her employment.  Def.'s SMF App. Ex. 13, Bason Aff. ¶¶ 2, 4, ECF No. 29-16.

On June 4, 2009, Bolivar wrote a letter to Mauney informing her of an ongoing issue with supervisor Thomas Duncan: he was "making fun of [Bolivar's] age and calling [her] old" in front of other employees.  Def.'s SMF App. Ex. 7, Letter from C. Bolivar to M. Mauney (June 4, 2009), ECF No. 29-10; Br. in Opp'n to Mot. for Summ. J., ECF No. 35 at 5 [hereinafter Bolivar

Aff.].[2]   A few days later, Bolivar wrote a letter to Mauney explaining that the Research Center treats white and black coworkers differently.  Def.'s SMF App. Ex. 8, Letter from C. Bolivar to M. Mauney (June 8, 2009), ECF No. 29-11.   In that letter Bolivar states that Gina Bodia ("Bodia"), a white female coworker, was treated differently than other employees and gets away with things that "[a] black person would/could never get away with."  *Id.*  As examples, Bolivar enumerated the following: (1) Bodia was frequently late and never written up; (2) she avoided weekend shifts; (3) she avoided participating in surveys that she did not want to do; and (4) she secured a day shift instead of a night shift after all the day workers, including Bolivar, were changed to the night shift.  *Id.*

Bolivar wrote a third letter to Mauney on June 12, 2009 stating that she had complained to the University of Georgia Human Resources department ("UGA HR") and the Employment Opportunity Office ("EOO").  Def.'s SMF App. Ex. 9, Letter from C. Bolivar to M. Mauney (June 12, 2009), ECF No. 29-12 at 2. Her complaints included employees' discriminatory commentary and Mauney's failure to deal with Bolivar's complaints about issues

---

[2] Even though this document was submitted after the Court's deadline set forth in its July 30, 2012 Text Order, the Court will consider Bolivar's sworn statements included in her Brief in Opposition to Motion for Summary Judgment, ECF No. 35, which was signed and sworn to by Bolivar before a notary public.  The Court, however, will not take into consideration Bolivar's unsworn factual statements contained in her initial Brief in Opposition to Motion for Summary Judgment, ECF No. 31, and the Addendum thereto, ECF No. 33.

in the Research Center, including complaints of age and race discrimination. *Id.* In July 2009, Bolivar wrote a letter to Janyce Dawkins asserting similar complaints. Bolivar Aff., ECF No. 35 at 4-5. She enumerated the following concerns in that letter: she had not been promoted to supervisor; Mauney had discussed making her a supervisor, but Mauney altered schedules so that no new supervisors were needed; the majority of supervisors were white; her supervisors seem bothered by her age and her willingness to speak out; the newest supervisor was a young black student; and Mauney had taken no action regarding Bolivar's complaints. Def.'s SMF App. Ex. 6, Letter from C. Bolivar to J. Dawkins (July 9, 2009), ECF No. 29-9.

## II.  April 2010 Supervisor Promotions

During the week of April 14, 2010, Mauney appointed two supervisors in the Research Center lab, but she did not appoint Bolivar. Mauney Decl. ¶¶ 11-12; Def.'s SMF App. Ex. 1, Letter from C. Bolivar to S. Burden (Apr. 21, 2010), ECF No. 29-4. Mauney explained her decision not to promote Bolivar:

> Ms. Bolivar was not selected for a supervisor position because she violated the rules on a regular basis, so I did not believe that she was someone who should be a role model for other telephone interviewers. This included her negative interactions with other employees, bringing food into the lab, sometimes cheating on her dialings, and not letting the phone ring the required number of times.

Mauney Decl. ¶ 12.   The two appointed supervisors were white. Bolivar Aff., ECF No. 35 at 2.   Most of the employees in the Research Center were black.   *Id.*   No announcement or job posting occurred before the supervisors were chosen.   *Id.*   Bolivar asked other supervisors why all employees were not notified of the job openings and why the positions were filled with white employees. *Id.*   She received no response and "was told that [she] was trying to start trouble."   *Id.*   Bolivar maintains that it was the practice of Mauney and other employees to "only hir[e] either young or Caucasian students to be supervisors."   *Id.*, ECF No. 35 at 3.

Bolivar submitted a complaint, dated April 21, 2010, to the UGA HR Director and EOO, alleging discrimination in the appointment of the two recent supervisor positions.   Mauney Decl. ¶¶ 11-12; Letter from C. Bolivar to S. Burden (Apr. 21, 2010).   Neither Mauney nor Bason were aware that Bolivar filed this complaint until after her termination.   *See* Bason Aff. ¶¶ 23-24 (stating that Bason learned of Bolivar's complaint approximately a week after her termination); Mauney Decl. ¶ 18 (stating that Mauney learned about Bolivar's complaint after she terminated her).

## III. Bolivar's Termination

On or before April 21, 2010, Mauney conferred with Bason about terminating Bolivar's employment.   Bason Aff. ¶¶ 20-22.

Mauney stated her reasons for recommending termination as follows:

> [Bolivar's] behavior had gotten to the point where it was disruptive to the other employees, to the supervisors, and to myself. My overall assessment was that Ms. Bolivar would not follow instructions, rules, and regulations, and her behavior was disruptive in a work environment that required close contact with others. In sum, her repeated misbehavior had become so intolerable and detrimental to the work of the Survey Research Center that I determined that termination was appropriate.

Mauney Decl. ¶ 13. "Due to Ms. Bolivar's continued pattern of problematic and disruptive behavior, [Bason] approved of Ms. Mauney's decision and told her to proceed with the termination." Bason Aff. ¶ 21. Bolivar claims that she never received communications or warnings about issues or incidents with her job performance at the Research Center. Bolivar Aff., ECF No. 35 at 4.

On April 22, 2010, Mauney terminated Bolivar's employment. *Id.*, ECF No. 35 at 2; Mauney Decl. ¶ 16. Afterwards, Bolivar "stopped in [Mauney's] office and told [Mauney] that [she] was filing with the EEO [sic] regarding the not posting the supervisor positions and putting in two Caucasian workers. [Mauney] didn't say anything." Bolivar Aff., ECF No. 35 at 2.

Bolivar went to Mauney's office to pick up a letter of termination on April 27, 2010. *Id.* Mauney told Bolivar that because she had been terminated she would not receive a

separation letter stating she was laid off. *Id.*, ECF No. 35 at 2-3. Mauney then gave Bolivar a termination letter. Mauney Decl. Attach. A, Letter from M. Mauney to C. Bolivar (Apr. 28, 2010), ECF No. 29-17 at 8.

## IV. Bolivar's Charge of Discrimination

Bolivar filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on October 15, 2010. Def.'s SMF App. Ex. 11, EEOC Charge, ECF No. 29-14. On the Charge, Bolivar stated the name of her employer as "University of Georgia" and marked that her discrimination was based on "age." *Id.* She stated as the particulars:

    I.   I was hired by the above-named company on October 1, 20008 [sic], as a Clerk III. I was discharged on April 22, 2010.

    II.   My separation notice states "Ms. Bolivar has been an ever-growing and conflicting influence on other interviewers in the telephone lab of the SRC. Her interaction with other employees has become unacceptable and her fit into the SRC organization is questionable."

    III. I believe that I have been discriminated against because of my age, (55), in violation of the Age Discrimination in Employment Act of 1967, as amended.

*Id.* She included no other particulars or facts on or with her Charge. The EEOC issued Bolivar a right to sue letter on November 22, 2010. Compl. Attach. 1, EEOC Notice of Suit Rights, ECF No. 1-1.

Bolivar filed the present action on February 18, 2011. Compl., ECF. No. 1.  In her Complaint, Bolivar's claims rest on her termination and inability to get promoted "because [she is] African American" and "because of Age."  Compl. ¶ 4, ECF No. 1. The Complaint further states that "[she] filed a complaint with UGA's EEO [sic] and was fired a day or so later."  *Id.* ¶ 9. Given Bolivar's *pro se* status, the Court liberally construes the Complaint as stating claims for age discrimination, race discrimination in promotion and termination, and retaliation.

DISCUSSION

## I.   ADEA Claim

Bolivar asserts a claim for age discrimination under the ADEA.  The Board contends that Bolivar's ADEA claim is barred by Eleventh Amendment immunity.  The Eleventh Amendment bars actions against a state or its agencies, departments, or officials, absent a waiver by the state or Congress, when the state is the real party in interest or when state officials are sued in their official capacities.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  The Board of Regents, the proper defendant, is an arm of the state of Georgia for the purposes of Eleventh Amendment immunity.  *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1522 (11th Cir. 1983).  "[T]he ADEA does not validly abrogate the States' sovereign immunity."  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 92 (2000).  Thus, the Board is

protected by Eleventh Amendment immunity, and the Court must grant summary judgment on Bolivar's ADEA claim.

## II.  Title VII Claims

The Board contends that Bolivar's Title VII race discrimination and retaliation claims should also be dismissed. The Board argues that the claims are procedurally barred because Bolivar failed to exhaust her administrative remedies by failing to raise or mention these claims in her EEOC Charge. Alternatively, the Board contends that the claims on their merits cannot survive summary judgment.  The Court addresses each argument in turn.

### A.  Administrative Exhaustion

Before filing suit under Title VII, a plaintiff must exhaust the available administrative remedies by filing a charge with the EEOC.  42 U.S.C. § 2000e-5(e)(1); *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (per curiam).  "[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280 (internal quotation marks omitted).  In general, "judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Id.* at 1279-80 (internal quotation marks omitted).  However,

courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Id.* at 1280 (alteration in original) (internal quotation marks omitted).

In Bolivar's EEOC Charge of discrimination, filed without aid of counsel, Bolivar alleged that she was terminated and alleged age discrimination.  Specifically, in that charge, Bolivar: (1) only marked the space for "age" discrimination in the "discrimination based on" portion of the form, leaving the "race" and "retaliation" spaces blank; (2) indicated that she was hired on October 1, 2008 as a Clerk III and discharged on April 22, 2010; (3) stated the terms of her separation notice as "Ms. Bolivar has been an ever-growing and conflicting influence on other interviewers in the telephone lab of the SRC.  Her interaction with other employees has become unacceptable and her fit into the SRC organization is questionable"; and (4) contended that she believed she was "discriminated against because of [her] age, (55)."  EEOC Charge.  Bolivar's EEOC Charge made no mention of any promotion she was denied, no mention of race discrimination, and no mention of retaliation— the allegations that now form the crux of her Complaint.

Bolivar clearly fails to mention race discrimination or retaliation in her EEOC charge.  Moreover, it is likely implausible that the EEOC investigation of her termination would

have reasonably uncovered any evidence of race discrimination or retaliation leading to her termination.  Consequently, Bolivar's Title VII claims should be dismissed because they are procedurally barred.  Notwithstanding this finding, the Court undertakes an analysis of the merits of Bolivar's claims and finds that the Board would be entitled to summary judgment even if her Title VII claims were not procedurally barred.

> B.   Bolivar's Race Discrimination Claims

The Court construes Bolivar's Complaint to state claims that she was not promoted and was later terminated because of her race in violation of Title VII.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Where, as here, a plaintiff relies on circumstantial evidence to prove discrimination, the Court utilizes the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *Springer v. Convergys Customer Mgmt. Grp. Inc.,* 509 F.3d 1344, 1347 (11th Cir. 2007) (per curiam).  First, Bolivar must establish a prima facie case of discrimination.  *Id.*  If Bolivar meets her burden of demonstrating a prima facie case, the Board

must articulate a legitimate, nondiscriminatory reason for the action. *Wilson v. Bellsouth Telecomms. Inc.*, 386 F. App'x 971, 972 (11th Cir. 2010) (per curiam). Once the Board articulates a legitimate, nondiscriminatory reason, Bolivar must then prove that the Board's reason is pretext for unlawful discrimination. *Id.*

### 1.  Failure to Promote Claim

Bolivar's Complaint alleges, "I was not promoted because I am African American." Compl. ¶ 9. She further alleges, "Two supervisor positions were filled without being posted. They were filled by two white persons." *Id.*

For Bolivar's failure to promote claim, she must show that: (1) she belonged to a protected class; (2) she was qualified for and applied for a position that the employer was seeking to fill; (3) despite her qualifications, she was rejected; and (4) the position was filled with an individual outside the protected class. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). "However, where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that [s]he applied for the position—only that the employer had some reason to consider [her] for the post." *Id.* For the purposes of its Motion for Summary Judgment, the Board does not contest Bolivar's ability to

13

establish a prima facie case for her failure to promote claim. Mot. for Summ. J. Attach. 1, Br. in Supp. of Def.'s Mot. for Summ. J. 11 n.6, ECF No. 29-1.

The Board articulated legitimate, nondiscriminatory reasons for selecting the other supervisor candidates over Bolivar:

> Ms. Bolivar was not selected for a supervisor position because she violated the rules on a regular basis, so I did not believe that she was someone who should be a role model for other telephone interviewers. This included her negative interactions with other employees, bringing food into the lab, sometimes cheating on her dialings, and not letting the phone ring the required number of times.

Mauney Decl. ¶ 12. The Court finds that this constitutes a "legally sufficient, legitimate, nondiscriminatory reason" because it is "a clear and reasonably specific factual basis upon which [Mauney] based [her] subjective opinion" not to promote Bolivar. *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000). A reasonable employer could be motivated to not promote an employee based on the proffered reason. *Id.* at 1030-31. The remaining question is whether Bolivar has pointed to sufficient evidence to create a genuine fact dispute as to pretext.

For a failure to promote claim, a "plaintiff cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the [employee] who received the position [s]he coveted. A plaintiff must show not merely that the

defendant's employment decisions were mistaken but that they were in fact motivated by race." *Harrell v. Ala. Dep't of Educ.*, 342 F. App'x 434, 436 (11th Cir. 2009) (per curiam) (second and third alterations in original) (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1339 (11th Cir. 2000)).   To rebut the Research Center's proffered reason for promoting two employees to supervisor instead of her, Bolivar "must show that the disparities between the successful applicant[s'] and her own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff[.]"  *Id.* (internal quotation marks omitted).   Bolivar does not proffer any evidence of pretext that meets this standard.   Therefore, the Board is entitled to summary judgment on this claim.

   *2.   Termination Claim*

   The Board likewise seeks summary judgment on any claim Bolivar may have asserted alleging that she was terminated because of her race.   The Board argues that Bolivar failed to establish a prima facie case of discriminatory termination.   To establish a prima facie case, Bolivar must show that (1) she was a member of a protected class, (2) she was qualified for the job at issue, (3) she was subject to an adverse employment action, and (4) her employer treated similarly situated employees outside of her protected class more favorably.   *Anderson v.*

15

*Embarq/Sprint*, 379 F. App'x 924, 928 (11th Cir. 2010) (per curiam).

Pretermitting whether she satisfies the first three elements of her prima facie case, it is clear that Bolivar does not satisfy the fourth element. A plaintiff must identify a comparator employee who is "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). Further, the Eleventh Circuit has "consistently held that a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that . . . the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984) (alterations in original) (internal quotation marks omitted).

Bolivar was fired because of her failure to follow rules and regulations and her disruptive behavior in the workplace. *See* Mauney Decl. ¶ 13; Bason Aff. ¶ 21; EEOC Charge. Accordingly, Bolivar must show that a similarly situated white employee who engaged in the same misbehavior as Bolivar was not terminated. The only evidence the Court can construe as touching upon the fourth element is a letter sent from Bolivar to Mauney discussing a white employee, Gina Bodia, who was late

to work without being disciplined and who was permitted to select her work and shift times. Letter from C. Bolivar to M. Mauney (June 8, 2009). This evidence is not sufficient. Bolivar has failed to show that she and Gina Bodia are "similarly situated in all relevant respects" or "nearly identical." *Wilson*, 376 F.3d at 1091 (internal quotation marks omitted). Bolivar has also failed to show that the conduct her supervisors claimed she engaged in was "nearly identical" to that engaged in by Gina Bodia. *Nix*, 738 F.2d at 1185. In fact, Bolivar's conduct was quite different. Therefore, Bolivar has failed to show that a white employee in similar circumstances engaged in nearly identical conduct and was retained while Bolivar was fired.

Nonetheless, a "plaintiff's failure to produce a comparator does not necessarily doom [her] case." *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) (alteration in original) (internal quotation marks omitted). "[A] plaintiff may use non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination and thereby create a triable issue." *Id.* (internal quotation marks omitted). Bolivar does not put forth other circumstantial evidence of discrimination that leads to an inference that Mauney or Bason terminated her with discriminatory intent. *Contra id.* at 1256 (finding that "the record contain[ed] enough

non-comparator evidence for a jury to reasonably infer that [defendant] discriminated against [plaintiff] because she was pregnant" when the record was replete with discussions of altering plaintiff's job because of her pregnancy and the human resource director admitted that plaintiff's pregnancy motivated the decision to fire her). Bolivar therefore fails to make out a prima facie case or create an inference of discrimination motivating her termination, and the Board is entitled to summary judgment as to this claim.

Moreover, even if Bolivar could establish a prima facie case of discrimination, the Board would still be entitled to summary judgment. The Board asserted legitimate, non-discriminatory reasons for Bolivar's termination: her failure to follow rules and "continued pattern of problematic and disruptive behavior." Bason Aff. ¶ 21; Mauney Decl. ¶ 13. In response, Bolivar merely asserts that she did not have knowledge of the problems with her behavior and that no documentation of her behavior exists. *See generally* Bolivar Aff., ECF No. 35. Bolivar's response consists solely of conclusory allegations. To produce sufficient evidence of pretext, a plaintiff must present "significant probative evidence" of pretext, not mere conclusory allegations. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (internal quotation marks omitted). Thus, Bolivar fails to present sufficient evidence

from which a reasonable fact finder could conclude that the Board's articulated legitimate, non-discriminatory reasons were pretext for discrimination. In sum, even if Bolivar had established a prima facie case of discriminatory termination, the Board is entitled to summary judgment on this claim.

C. Bolivar's Retaliation Claim

Bolivar also asserts that she was terminated in retaliation for complaining about the alleged discrimination by employees of the Research Center. The Board seeks dismissal of this claim.

Title VII prohibits retaliation against an employee because she has opposed an unlawful employment practice, made a charge, or participated in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). To recover for retaliation, Bolivar "need not prove the underlying claim of discrimination which led to her protest, so long as she had a reasonable good faith belief that the discrimination existed." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotation marks omitted). Bolivar must make out her prima facie case of retaliation under Title VII by showing the following: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Once Bolivar

19

establishes a prima facie case of retaliation, the Board must proffer a legitimate, non-retaliatory reason for the adverse action. *Meeks*, 15 F.3d at 1021. If the Board does so, Bolivar may rebut that reason by showing it is a mere pretext for retaliation. *Id.*

For the purposes of this motion, the Board assumes that Bolivar meets the first two elements of her prima facie case: (1) her complaint constituted a statutorily protected activity, and (2) she was terminated, which constitutes an adverse employment action. The Board challenges whether Bolivar satisfies the causation element of her prima facie case because Bolivar points to no evidence of a causal connection between her complaint and her termination.

To establish a causal connection, Bolivar must merely establish that the protected activity and the adverse action "are not completely unrelated." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) (internal quotation marks omitted). "[A] plaintiff satisfies [the causation] element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999); *accord Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Bolivar's Complaint alleges, "I filed a complaint with UGA's EEO [sic] and was fired a day or so later." Compl. ¶ 9. On April 21, 2010, Bolivar complained to UGA HR and EOO about the allegedly discriminatory promotion of white employees to supervisor positions and that she was discriminated against in the process for hiring supervisors because of her age and race. Letter from C. Bolivar to S. Burden (Apr. 21, 2010). The next day, April 22, 2010, Mauney fired Bolivar. Mauney Decl. ¶ 16. Bolivar claims that she was fired in retaliation for complaining.[3]

Although Bolivar was terminated the day after she filed her complaint with UGA HR and the EOO, temporal proximity is not enough to establish a causal connection in this case.

> The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.

_____

[3] Bolivar's retaliation claim does not seem to rely on the letters she sent in June and July 2009 to Research Center and UGA HR employees as protected actions ultimately leading to retaliation. For good measure, the Court notes that even if she did rely on those letters, Bolivar cannot establish the requisite causal connection between those letters and her termination. Bolivar was terminated more than nine months after she sent the June and July 2009 letters, and she put forth no other evidence of a causal connection. The temporal proximity of the letters to Bolivar's termination is insufficient to create a jury issue on causation. *See Nichols v. CSG Sys., Inc.*, 245 F. App'x 937, 941 (11th Cir. 2007) (per curiam).

*Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (internal citations omitted).  Bolivar points to no evidence that Mauney or Bason, the decision makers, were aware that Bolivar had filed her complaint when they terminated her. Mauney and Bason both stated under oath that they were not aware of Bolivar's complaint until after they terminated her.  Bason Aff. ¶¶ 23-24; Mauney Decl. ¶ 18.  Because she failed to put forth any evidence that Mauney or Bason knew about her complaint before they terminated her, Bolivar failed to establish a causal connection between her complaint and her termination.  And, because she did not establish a causal connection, she failed to establish a prima facie case of retaliation under Title VII. *See, e.g.*, *Jackson v. B&L Disposal, Inc.*, 425 F. App'x 819, 821 (11th Cir. 2011) (per curiam).  Accordingly, the Board is entitled to summary judgment as to Bolivar's Title VII retaliation claim.

Furthermore, even if Bolivar could establish a prima facie case of retaliation, she still would not prevail.  As explained above, the Board has provided legitimate, non-retaliatory reasons for the termination of Bolivar's employment, and Bolivar has produced insufficient evidence of pretext.  Thus, even if Bolivar could establish a prima facie case of retaliation, the Board is entitled to summary judgment on her Title VII retaliation claim.

CONCLUSION

For the aforementioned reasons, the Court grants Defendant's Motion for Summary Judgment (ECF No. 29).


IT IS SO ORDERED, this 16th day of October, 2012.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE